Hugh B. Buckner and Thelma G. Buckner v. Commissioner.
Buckner v. Commissioner
Docket No. 1667-62.
United States Tax Court
T.C. Memo 1964-147; 1964 Tax Ct. Memo LEXIS 191; 23 T.C.M. (CCH) 883; T.C.M. (RIA) 64147; May 25, 1964
*191 Held, respondent's determination of petitioners' business income by the cash expenditures and source of funds method sustained, except for one item. Held, further: At least a part of the deficiency was due to negligence or intentional disregard of the rules and regulations, and was not due to reasonable cause. Addition to tax under section 6653(a), I.R.C. 1954, upheld. Hugh B. Buckner, pro se, 231 Cedar Crest, Tuscaloosa, Ala., Robert G. Faircloth, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1959 in the amount of $1,526.46 and a deficiency in addition to tax, under section 6653(a), [1] in the amount of $76.32. The issues for decision are: (1) Whether petitioners realized unreported income in 1959 in the amount of $7,206.47, computed by the so-called source and application of funds method; and (2) whether any part of the deficiency is due to negligence or to intentional disregard of rules and regulations and not to reasonable cause. Findings of Fact Some of the facts have been stipulated *192 and are found accordingly. Petitioners are husband and wife residing in Tuscaloosa, Ala. They filed a joint Federal income tax return for the taxable year 1959 with the district director of internal revenue, Birmingham, Ala. Hereafter, petitioners will be referred to by their first names, Hugh and Thelma. In 1958 Hugh operated a cafe in Tuscaloosa in partnership with Dan A. Pearson. The cafe business operated by Hugh and Pearson was unsuccessful and in late 1958, the business was sold by decree of a local court to discharge partnership debts. Hugh bought the assets sold by court order for $855 in December 1958. He borrowed $850 from his father to make this purchase and gave his father a note, dated December 22, 1958, in the principal amount of $2,000, secured by a mortgage on the furniture, fixtures, and stock in trade of the Chuck Wagon Cafe, the name of the business operated by Hugh after its purchase. Hugh's note to his father represented the total of advances made to Hugh prior to December 1958, plus the amount of $850. Hugh operated the Chuck Wagon Cafe throughout 1959; in addition he operated a business of selling cigarettes through vending machines. He also sold some cigarette *193 vending machines in 1959. Hugh maintained a bound book purporting to be a record of purchases, sales, and expenses of the partnership business in 1958. Included in this book were some notations pertaining to the year 1959, including a recapitulation of net income from the sale of cigarettes and cigarette-vending machines, as follows: Sales of cigarette machines
$4,045.69
Equity in machines
2,929.40
Gross profit from sales
$1,116.29
Less: Expenses
376.29
Net profit from sales
$ 740.00
Profit from cigarette sales [1]
510.00
Net profit from cigarette business
$1,250.00
Petitioners reported the following net loss from Hugh's business on their tax return for 1959: Total sales - cafe
$17,449.50
Commission on sale of equipment [1]
1,250.00
18,699.50
Less: Cost of goods sold -
Inventory at beginning
of year
$ 260.00
Purchases
13,309.02
Merchandise available
for sale
13,569.02
Less inventory at end
of year
580.00
Cost of goods sold
12,989.02
12,989.02
Gross profit
5,710.48
Less: Expenses[2] *194 6,869.98
Net loss
($ 1,159.50)
The only other income reported on petitioners' return was Thelma's salary; and no other deductions were claimed. In 1959, Hugh did not deposit all of his business receipts in his bank account, and he made expenditures in cash. During 1959 Thelma was a salaried employee of a ladies' ready-to-wear shop in Tuscaloosa. She received wages of $3,192.73 in 1959 and an income tax refund in that year of $305.10. Thelma also borrowed $500 from a life insurance company in January 1959. Hugh and Thelma made a downpayment of $5,000 on a house in 1959. Thelma borrowed $3,200 from her father in order to pay $2,500 of the downpayment. The excess of $700 was spent for small bills and miscellaneous items. Hugh paid at least $2,200 of the downpayment by depositing this amount in currency to Thelma's bank account to cover a check for the downpayment. Hugh made expenditures for the following items in 1959: Downpayment on house
$ 2,200.00
Payments on home
352.49
Hugh's personal expenses
500.00
Utility deposit
100.00
Payment on music machines
1,309.79
Payments on loan on Dodge
957.60
Payments on cigarette machines
2,473.46
Payments on auto loan
89.41
Payments on cafe equipment: Coca Cola box
$176.80
Beer cooler (rent)
300.00
Booths and counter
240.00
Refrigerator
46.70
Cigarette machine
300.00
1,063.50
Purchases for cafe per return [1]
13,309.02
Purchases of cigarettes for resale [1]
7,649.26
Expenses claimed in return [2]
6,869.98
Total expenditures
36,874.51
*195 In 1959 Hugh received $4,045.69 from the sale of cigarette machines. Hugh had some cash on hand at the beginning of 1959, but no more than he had at the end of that year. Thelma's earnings and the money she borrowed in 1959 were used for her own purposes and were not used to pay for the foregoing expenditures made by Hugh in 1959. Gross receipts from Hugh's businesses in 1959 amounted to $32,828.82. Net profit was $3,959.72. Petitioners' adjusted gross income for 1959 was $8,386.59. At least part of the deficiency herein resulted from negligence or intentional disregard of rules and regulations, and was not due to reasonable cause. Opinion Respondent determined that Hugh's books and records did not adequately reflect the income from his business and, because Hugh did not deposit all of his sales in his bank account and made purchases for cash, that neither the bank deposits method nor the percentage of markup method of computing Hugh's business income should be used to determine the income from Hugh's business. Respondent *196 thereupon determined the amount of cash expenditures made by Hugh in 1959, and, after deducting therefrom all cash available to Hugh from known sources, determined that the remainder of the cash spent by Hugh in 1959 represented gross receipts from Hugh's business in 1959. Having thus determined that the gross receipts from Hugh's business were $33,681.93, respondent computed the net profit from Hugh's business, including the operation of the cafe and the cigarette sales and vending machine businesses, primarily by allowing the business deductions claimed on petitioners' return plus the cost of cigarettes as claimed by Hugh, and adding thereto depreciation which had not been claimed on the return. In making the above computations respondent did not consider Thelma's income and available cash from other sources, nor her expenditures, on the theory that Thelma's funds were not used for expenditures made by Hugh, which we have found to be a fact from the evidence presented. Essentially the method used by respondent is merely the cash expenditure method for reconstructing income and is akin to the net worth method. Hoffman v. Commissioner, 298 F. 2d 784 (C.A. 3, 1962), affirming a Memorandum *197 Opinion of this Court. We believe respondent's resort to this method for reconstructing petitioners' income was clearly warranted in this case and was not arbitrary. Respondent has the right to employ the net worth and cash expenditures method to reconstruct income without proof that the taxpayer's books and records are deficient in a specific regard. Holland v. United States, 348 U.S. 121 (1954); Hoffman v. Commissioner, supra.At the trial Hugh offered in evidence a record book which purported to record the income and expenditures for the cafe for the year 1958 and Hugh testified that he had presented a similar book to respondent's agent for 1959 which the agent had not returned to him and hence it was unavailable at the trial. The agent testified that he had not seen such a book and that he had returned to Hugh all records Hugh had given him. But even if Hugh did keep such a book for the cafe business for 1959 and even if the entires contained therein supported the figures on petitioners' return, we do not believe it would constitute evidence convincing enough to overcome the presumptive correctness of respondent's determination that Hugh made the expenditures set forth in our *198 findings from business receipts. In the notice of deficiency respondent set forth not only the expenditures which he determined Hugh had made in 1959, but also the ascertainable source for such expenditures; that is, the proceeds from the sale of cigarette machines taken from Hugh's records. Therefore, the burden was undoubtedly upon petitioners to demonstrate error in respondent's determinations. Hoffman v. Commissioner, supra. Hugh represented petitioners at the trial and petitioners filed no brief. Hugh was advised that petitioners had the burden of proving respondent's determination to be in error, and respondent's method of reconstructing petitioners' income was carefully explained to him. Petitioners testified fully and in their own words with that understanding. However, the evidence offered by petitioners was disconnected and inconclusive and, with the one exception hereafter noted, lacked a good deal in carrying their burden of proving wherein respondent was in error. Hugh was examined by the Court with respect to each of the expenditures itemized in the notice of deficiency. He agreed that he had made the expenditures in 1959, with the exception of payments on partnership *199 liabilities in the amount of $853.11 and an item in the amount of $1,309.79, representing a downpayment on music machines bought in December 1959, which he claimed was not paid until 1960. However, the conditional sales contract for the machines, offered in evidence by respondent, was dated December 21, 1959, and recorded December 31, 1959, and recited the downpayment of $1,309.79, with the balance to be paid in monthly installments beginning January 21, 1960. We do not believe the seller would have accepted this contract and recorded it unless the downpayment had actually been received. The only conclusion we can reach from the evidence presented and the presumption running in repondent's favor is that Hugh made the expenditures itemized in the notice of deficiency, except the item of partnership liabilities mentioned above which we will discuss later, and we have so found as a fact. Finding that the expenditures were made, we turn to consideration of the source. Petitioners do not contend that Hugh received any gifts or inheritances in 1959; nor that he had any more cash on hand at the beginning of 1959 than he had at the end of that year Thelma had funds from her salary and loans *200 but these funds were expended either for her share of the downpayment on the house or for miscellaneous bills and household expenses and not for the expenditures with which we are concerned. So far as we can discern from the testimony, the only assets petitioners sold during 1959 were the cigarette machines which respondent has taken into account. Hugh maintained that he borrowed funds during 1959. We have considered the evidence bearing on this point and have concluded that the loans about which he testified were made in other years, and that he did not use the proceeds of a purported loan made to him by his father in December 1958 to make expenditures in 1959. In fact, entries in his books for 1958, originally showing loans in other years but marked over to indicate loans in 1959, rebut his testimony. Hugh testified that he made expenditures for business expenses which respondent has not taken into account. If this be true it only means that his receipts are to be increased by the amount of such additional expenditures, and the result remains the same. Petitioners have suggested no other sources of nontaxable funds. This leads to the conclusion that the source of the funds used *201 by Hugh to make the expenditures was the gross receipts from his business. On the evidence presented we can find no error in respondent's determination of gross receipts from Hugh's business, except as noted below. Amounts for purchases and deductions have been derived from the return, and petitioners do not contend that they are incorrect. We must conclude that petitioners have failed to prove any error in respondent's determination of their taxable income for 1959, except as follows. In addition to the expenditures made by Hugh as set forth in our findings of fact, respondent also determined that Hugh paid the sum of $853.11 on liabilities of the 1958 partnership in 1959. The evidence indicates that the partnership failed in 1958 and the assets were sold by a court. Hugh testified that he borrowed $850 from his father in December 1958 to buy the assets in at the public sale and that he gave his father a note for $2,000 to cover this and previous loans. Respondent's agent who conducted the examination of petitioners' returns was asked about this item and he testified only that at the time of the sale of the partnership business in 1958 he had noticed that there were more liabilities *202 than the proceeds of the sale would cover and that Hugh had told him he had paid $853.11 on these liabilities during 1959. Hugh denied this at the trial. Because of the similarity in amount between this figure and the $850 Hugh paid for the partnership assets at the sale, which Hugh testified he thought he paid in 1959, we are inclined to think that either Hugh or the agent was confused on this point when the agent originally talked to Hugh and that Hugh made only one $850 expenditure for the partnership assets and liabilities. Since we have concluded that this $850 was paid with funds Hugh borrowed from his father in December 1958 and since Hugh has been given no credit for this loan as a source of nontaxable funds for 1959, we have eliminated the $853.11 from expenditures respondent determined Hugh made in 1959. This reduces the gross receipts from Hugh's business as determined by respondent accordingly, and also reduces petitioners' taxable income in a like amount. The second issue is whether any part of the deficiency is due to negligence or to intentional disregard of rules and regulations so that petitioners are liable for an addition to tax under section 6653(a). The burden *203 of proof was upon petitioners to show reasonable cause, and they adduced no evidence on the issue at the trial, except Hugh's testimony that he maintained books and records which he turned over to the examining officer and which were never returned to him. We do not believe that Hugh maintained adequate books and records from which his taxable income could be computed for the year 1959. We further believe that his failure to do so was due to negligence, and that his failure to keep records from which the underlying facts necessary to a determination of correct income could be ascertained gave rise to the deficiency which we find to be due. Consequently, petitioners are liable for an addition to tax under section 6653(a). We note that petitioners' return for 1959 was prepared by a party other than Hugh or Thelma. But the preparer's qualifications and petitioners' reliance upon his advice, if reliance there was, is not shown. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise noted.↩
1. Computed at profit of 2 cents per pack on sales of 25,500 packs.↩
1. This would appear to be the net income from the sales of both cigarettes and machines, as shown above. ↩
2. Itemized, including labor, rent, utilities, taxes, and other categories, but no deduction claimed for depreciation.
1. These amounts appear in the back of Hugh's record for 1958. ↩
2. Total expenses appearing in a recapitulation for 1959 in the back of Hugh's record for 1958 are $6,874.98.↩